CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
DEC 19 2008
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| EDDIE E. SUTHERLAND, | ) | CASE NO. 4:08CV00006 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | By: B. Waugh Crigler |
| | ) | U. S. Magistrate Judge |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's claims for a period of disability, disability insurance benefits, and supplemental security income ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the plaintiff's motion for summary judgment, DENYING the Commissioner's motion for summary judgment, REVERSING the Commissioner's final decision, entering judgment for the plaintiff and RECOMMITTING the case to the Commissioner solely to calculate and pay proper benefits.

In a decision issued on January 8, 2007, an Administrative Law Judge ("Law Judge") found that, though incapable of performing his past relevant work ("PRW"), other jobs existed in the national economy that plaintiff could perform. (R. 43-53.) Thus, the Law Judge concluded

that plaintiff was not disabled under the Act. (R. 52.) Plaintiff appealed this decision to the Appeals Council. (R. 39.)

By Order dated April 12, 2007, the Appeals Council granted plaintiff's request for review. (R. 32-34.) The Law Judge's January 8, 2007 decision was vacated, and the case was remanded to a Law Judge for the resolution of issues set forth in the Order. (R. 32-33.) The Order allowed plaintiff the opportunity for another hearing and required the Law Judge to take any additional action necessary to complete the administrative record and issue a new decision. (R. 34.)

In a new decision, dated December 5, 2007, the Law Judge found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date, January 15, 2005, and that he was insured for benefits through December 31, 2007. (R. 15.) He determined that plaintiff suffered the following severe impairments: obesity, osteoarthritis, and arthritis/tendonitis/bursitis in the right knee with pain.[1] (*Id.*) However, the Law Judge found that plaintiff did not suffer an impairment or combination of impairments which met or medically equaled any listed impairment. (R. 18.) The Law Judge further found that he had the residual functional capacity ("RFC") to perform sedentary work requiring lifting up to ten pounds occasionally and less than ten pounds frequently, standing and/or walking up to two hours in an eight-hour workday, sitting up to six hours a day, and performing pushing and/or pulling, including the use of foot and/or hand controls. (*Id.*) It was determined that plaintiff had no postural, manipulative, visual, or communicative limitations, but that he was limited to reading only simple words at less than a sixth grade level.

---

[1] The Law Judge found that the claimant's alleged breathing problems and hypertension/high blood pressure, viewed individually or in combination, were not "severe" impairments. (R. 15.)

2

(*Id.*) The Law Judge concluded that plaintiff's RFC precluded the performance of his PRW[2], but other jobs exist in the national economy that he could perform.[3] (R. 22-23.) Thus, the Law Judge concluded that he was not disabled. (R. 24.)

Plaintiff appealed this decision to the Appeals Council. (R. 6-8.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's December 5, 2007 decision as the final decision of the Commissioner. (R. 6.) This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F. 2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

In the brief filed in support of his motion for summary judgment, plaintiff initially argues that the Law Judge erred in failing to find that he was disabled under the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C). (Pl's Brief, pp. 18-22.) Plaintiff believes the indisputable expert evidence reveals a full scale IQ of 67 and evidence from other sources

---

[2] Plaintiff's PRW consists of a tear down mechanic, transmission mechanic, and a dairy farm worker. (R. 22.) Plaintiff's work as a mechanic was unskilled, heavy exertional work, and his work as a farm worker was unskilled, medium exertional. (*Id.*)

[3] The Law Judge noted that jobs as an assembler and production inspector were representative of positions that a person with plaintiff's RFC could perform. (R. 23.)

3

demonstrates a mental deficiency from an early age. (Pl's Brief, pp. 18-21.) Plaintiff also contends that there is substantial evidence establishing that he suffers physical maladies which, according to the Law Judge's own findings, impose significant work-related limitations that limit him to less than a full range of sedentary work. (Pl's Brief, pp. 21-22.)

According to the Commissioner's regulations, the listed impairment of mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. To meet the requirements of § 12.05(C), a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70 and (2) a physical condition or another mental impairment which imposes additional and significant work-related limitation of function. *Id.* at § 12.05(C).

Here, the Law Judge concluded that plaintiff did not meet the requirements of § 12.05(C) because he did not find the evidence demonstrated that plaintiff showed deficits in adaptive functioning prior to age twenty-two. (R. 16.) The Law Judge's primary justification for this finding is the existence of IQ scores from group IQ testing performed on plaintiff in 1966 while he was in elementary school. (R. 156.) The undersigned does not believe this finding is supported by substantial evidence.

On March 23, 2006, Blanche Williams, Ph.D., a clinical psychologist, evaluated plaintiff. (R. 225-232.) She found that, generally, he was well-oriented; his attention and immediate recall were fair; his calculation ability, judgment, and insight were poor; his self-esteem was good; and

4

his GAF was 48[4]. (R. 230-231.) Dr. Williams further found that plaintiff's ability to understand, remember, and carry out complex job instructions and his ability to understand, remember, and carry out detailed but not complex job instructions were poor due to his serious intellectual deficits. (R. 226.) The psychologist specifically noted that job instructions provided to plaintiff would need to be very concrete and simple, and if he were asked to perform anything other than simple, repetitive tasks, he would need additional supervision. (R. 226, 232.) Dr. Williams opined that plaintiff was so cognitively deficient that he could not be relied upon to perform anything other than simple, repetitive tasks on a consistent basis, and that supervisors, coworkers, and the public would need to accommodate his cognitive deficits. (R. 232.) Dr. Williams believed that plaintiff was naive and somewhat childish, and that the usual stresses encountered in a competitive work environment would likely prove to be more than he could manage intellectually. (R. 226, 232.) Individualized IQ testing was performed and revealed a Full-Scale IQ of 67, a Verbal IQ of 66, and a Performance IQ of 75.[5] (R. 231.) Finally, Dr. Williams opined that plaintiff was mildly mentally retarded and that his intellectual capacity would not change[6]. (R. 231-232.)

---

[4]Global Assessment of Functioning ("GAF") ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness ranging from zero to 100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed 2000) *(DSM-IV)*. A GAF of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *Id.* at 34.

[5]When more than one IQ is customarily derived from the test administered, the regulations provide that the lowest score is to be used. C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c). Thus, plaintiff's applicable IQ score is 66.

[6]It is well-established that, absent evidence of a change in intellectual functioning, IQ is assumed to remain relatively constant. *See Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir.1989) (citing *Branham v. Heckler,* 775 F.2d 1271, 1274 (4th Cir. 1985)).

The record shows that plaintiff suffered deficits in adaptive functioning manifested during the developmental period. For example, plaintiff attended school only through the seventh grade, and he repeated the first and fifth grades. (R. 156, 228, 296.) Additionally, his school records reveal he received significantly low grades. (R. 156, 298.) Finally, all of plaintiff's PRW was unskilled.[7] (R. 23.)

Dr. Williams' report further reveals deficits in adaptive functioning during the developmental period. Specifically, she performed valid IQ testing which resulted in scores she found consistent with his reports of "great difficulty in school" and with "his general presentation during the evaluation."[8] (R. 227, 231.) Dr. Williams also noted that plaintiff reported and demonstrated that he possessed a significant inability to benefit from instruction during his school years. (R. 232.)

Letters from plaintiff's nieces also show plaintiff had deficits in adaptive functioning during the developmental period. (R. 258.) Anita Oquinn wrote that plaintiff's mind was "abnormal," that his mental retardation was noticed as a child, and that plaintiff lacked the mental capacity to tell his body what to do. (*Id.*) Deborah Demott, another of plaintiff's nieces, wrote that plaintiff was a slow learner, and, according to her recollection, most of plaintiff's education was in

---

[7]The Commissioner has attempted to cast doubt on plaintiff's description of his PRW as unskilled by suggesting that plaintiff has not been consistent in the characterization of his job. (Comm's Brief, p. 14.) The undersigned does not find this argument compelling. At his October 16, 2007 hearing, plaintiff described his PRW, and the VE concluded that it was all unskilled. (R. 312.) Moreover, to the extent that plaintiff characterized his mechanic position as more skilled than it actually was, plaintiff's niece noted that he tended to exaggerate his overall abilities as a mechanic. (R. 258.)

[8]Of course, the fact plaintiff experienced difficulty in school is shown by evidence discussed above.

6

learning disabled (LD) classes, and even still, he did not meet the basic academic requirements. (R. 260.) Even now, DeMott noted that plaintiff "barely" can read or write, and though he indicates he understands when things are explained to him, he does not remember, does not understand, and seems unwilling to acknowledge his inability to understand and remember. (*Id.*) DeMott concluded by noting that plaintiff "does not do well at anything." (R. 261.)

The Commissioner relies on a group IQ test administered to plaintiff when in he was in the second grade as substantial evidence to countervail that revealed by more recent individualized IQ testing. (Comm's Brief, p. 13.) The 1966 group testing revealed a score of 93, with an age equivalence of 7 years, 8 months. (R. 156.) This test score was reported in a scholastic record that also reflects plaintiff repeated both the first and fifth grades. (*Id.*) However, there is no evidence, objective or otherwise, in the scholastic record to assess the data or bases upon which the 1966 group IQ test was performed. (*Id.*) In other words, nothing in the record supports the validity or reliability of the score.

The preamble to Listing 12.05(C) suggests that narratives should accompany intelligence tests in order to comment on the validity of the test and its consistency with the claimant's developmental history and the degree of functional limitation. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(D)(6). Plaintiff's 1966 bare IQ score does not meet this standard. Moreover, the recent individualized IQ test performed by Dr. Williams is accompanied by an extensive report which allows for an assessment of the validity of the test and the extent to which it is consistent with plaintiff's other developmental history and functional limitations. In short, the undersigned cannot find that the 1966 IQ score, accompanied by no report, possesses the requisite indicia of validity and reliability so as to constitute substantial evidence completely countervailing the 2006

7

IQ test performed by Dr. Williams, the scholastic record evidence relating to plaintiff's failures in the first and fifth grades and the un-rebutted historical evidence offered by plaintiff's lay evidence concerning his functional limitations.[9] When coupled with the Law Judge's own findings related to plaintiff's functional limitations, plaintiff has proved he suffers a listed impairment.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the plaintiff's motion for summary judgment, DENYING the Commissioner's motion for summary judgment, REVERSING the Commissioner's final decision, entering judgment for the plaintiff and RECOMMITTING the case to the Commissioner solely to calculate and pay proper benefits.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
U.S. Magistrate Judge

12-19-08
Date

---

[9]The regulations define mental retardation as a lifelong condition. *Luckey,* 890 F.2d at 668 (citing *Branham,* 775 F.2d at 1274).

8