IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| EDDIE E. SUTHERLAND, ) | |
| ) | Case No. 4:08CV00006 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | By: Jackson L. Kiser |
| ) | Senior United States District Judge |
| Defendant. ) | |

Before me is the Report and Recommendation of the United States Magistrate Judge recommending that Plaintiff's Motion for Summary Judgment be granted, denying the Commissioner of Social Security's ("Commissioner") motion for summary judgment, reversing the Commissioner's final decision, entering a judgment for the Plaintiff and recommitting the case to the Commissioner solely to calculate and pay proper benefits. The Commissioner filed objections to the Magistrate's Report and Recommendation. I have reviewed the Magistrate Judge's recommendation, Defendant's objections, and relevant portions of the record. The matter is now ripe for decision. For the reasons stated below, I will **REJECT** the Magistrate's Report and Recommendation and **GRANT** the Defendant's Motion for Summary Judgment.

### I.     PROCEDURAL HISTORY

On June 6, 2005, Mr. Eddie Sutherland filed an application for disability insurance benefits \ and supplemental security income under titles II and XVI of the Social Security Act (42 U.S.C. §§ 401-433,1381-1383f) alleging disability beginning January 15, 2005 due to arthritis in both knees, lower back pain, and shortness of breath. (R. 59, 111, 134, 242.) The

1

claim was denied initially and upon motion for reconsideration. (R. 59-60, 242, 250.) Plaintiff timely filed an appeal and a hearing was conducted before an Administrative Law Judge ("ALJ"). (R. 81.) On January 8, 2007, the ALJ issued an opinion denying benefits to Mr. Sutherland. (R. 43-53.) Mr. Sutherland appealed and on April 12, 2007, the Appeals Council granted Sutherland's request for review, vacated the hearing decision, and remanded the case to the ALJ by finding the medical evidence revealed Sutherland may have a mental impairment and that the hearing decision did not reflect an evaluation of the severity or effects of the mental impairment pursuant to 20 CFR 404.1520a[1]. (R. 32-34).

A second hearing was conducted on October 16, 2007 and an opinion issued by the ALJ on December 5, 2007. (R. 23-24.) The Plaintiff[2], a medical expert, and a Vocational Examiner ("VE") all testified. (R. 286-321.) The ALJ found Sutherland had severe impairments including obesity, osteoarthritis, and arthritis/tendonitis/bursitis in right knee with pain. (R. 15.) The ALJ found that Sutherland's breathing problems and hypertension/high blood pressure were not severe impairments. He dismissed the diagnosis of chronic pulmonary disease or bronchitis, justifying such dismissal because Sutherland continued to smoke cigarettes. (R. 15.) The ALJ found that the Plaintiff's mental health impairments were not severe, and that the evidence failed to establish that the condition existed prior to age 22, per 20 CFR 404, Subpt. P, App. 1 § 12.05.[3] (R. 20.) The ALJ also held that Sutherland could perform a limited range of sedentary work, including the representative jobs identified by the VE. (R. 23-24.)

---

[1] This section describes the process of evaluating mental impairments for benefits determination.

[2] The Plaintiff was represented by counsel at the hearing.

[3] Section 12.05C requires evidence of a "valid verbal, performance or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. 404, Subpt. P, App. 1. § 12.05. The section also requires evidence of significantly subaverage general intelligence demonstrating the onset of the impairment before age 22. Id.

The ALJ found that Sutherland was not capable of performing his past relevant work as a dairy farm worker, tear down mechanic, and transmission remover as this was heavy or medium work. (R. 22.) The ALJ found that Sutherland is literate and able to communicate in English. (r. 23.) Pursuant to 20CFR 404.1568 and 416.968, the ALJ found that transferability of job skills was not an issue because his past relevant work was unskilled. (R. 23.)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Sutherland's request for review (R. 6-9.). The case was before the Magistrate of this Court to rule on the parties' cross-motions for summary judgment. On December 19, 2008, the Honorable B. Waugh Crigler, United States Magistrate Judge, recommended that this Court reverse the Commissioner's final decision in this case and recommit the case to the Commissioner solely to calculate and pay benefits based upon a determination that Sutherland met the requirements of Listing 12.05C. (Report and Recommendation at 7-8).

**II.    STATEMENT OF FACTS**

The Plaintiff Eddie Sutherland was born in June 1958, and was 49 years old at the time of the ALJ's decision, and 46 years old as of his alleged date of onset of disability. (R. 111, 266.) He completed the sixth grade and ceased attending school in the seventh grade. (R. 266-67, 290.) His past relevant work experience includes working as a tear down mechanic, transmission mechanic, and a dairy farm worker. (R. 312-13.) In June 2005, Sutherland filed for disability with the Social Security Administration, stating that he stopped working in 2002 because he was laid off from his job when the company went out of business. (R. 104-05, 129, 228.) Sutherland is married, lives with his wife, and has no children. (R. 275-76.) He testified that they lived on

3

his wife's wages, but acknowledged that he picked up small jobs from time to time doing things like putting an alternator in a vehicle. (R. 276-77.) He also testified that he had a history of taking cash for doing mechanical work, and that he had done a job for someone just the other day. (R. 278-79.)

On August 25, 2005, Leon Grigoryev, M.D., performed a consultative musculoskeletal examination a neurological examination, which revealed that Sutherland's speech was normal and his comprehension was intact. (R. 166.) He did not appear to have any cognitive deficits. (R. 166.)

On September 7, 2005, a state agency medical consultant performed a residual functional capacity assessment based upon his review the evidence. (R. 182-88.) The state agency physician's findings were largely consistent with the assessments stated previously. (R. 183.) The state agency physician specifically noted that Sutherland provided inconsistent information regarding his daily activities, and that his treatment had been essentially routine and conservative in nature. (R. 188.) On November 18, 2005, J. Astruc, M.D., a state agency physician, reviewed the evidence and affirmed the assessment of September 7, 2005, as written. (R. 188.)

On March 23, 2006, Blanche Williams, Ph.D., performed a psychological evaluation at the request of Sutherland's attorney for the purpose of obtaining disability benefits. (R. 227.) Sutherland told Dr. Williams that he had applied for disability benefits because of arthritis in his knees and back. (R. 228.) In addition, Sutherland stated that he had never been treated by a mental health professional. (R. 228.)

The examination revealed that Sutherland's speech was clear, spontaneous, and goal-directed, and there were no difficulties with thought content, process, or pace. (R. 229-28). There were no perceptual abnormalities, and mood and affect were within normal limits. (R.

4

229.) Sutherland also performed at a normal level in other very simple mental tests. (R. 230.) Dr. Williams administered the WAIS-III and reported that Sutherland had a Full Scale I.Q. of 67, a Verbal I.Q. of 68, and a Performance I.Q. of 75. (R. 231.)

Dr. Williams diagnosis of Sutherland included that he had mild mental retardation. (R. 231.) Dr. Williams acknowledged that she did not have any evidence that Sutherland was diagnosed mentally retarded during his childhood or adolescence. (R. 232.) Dr. Williams concluded that due to his intellectual deficits, he could not perform anything other than simple, repetitive tasks on a consistent basis. (R.232.)

At the first administrative hearing to review the decision on the Commissioner, Sutherland testified that he had difficulty with reading and writing, but acknowledged that he could read the correspondence that the Administrative Law Judge ("ALJ") sent him "for the most part." (R. 267.) He also testified that he reads and understands the newspaper. (R. 267.) In describing his past relevant work as a mechanic, Sutherland reported that he had to tear down motors and put them back together. (R. 267.) When asked why he could not work, Sutherland claimed that he had problems with his knees, and breathing, but acknowledged that he continued to smoke. (R. 270.) In addition, Sutherland claimed that he had arthritis, back problems, and high blood pressure. (R. 271-72.) He testified that he had problems lifting, but acknowledged that he could lift approximately 25 pounds comfortably. (R. 273.)

At the second administrative hearing, Sutherland testified that he is able to drive (R. 291), but in contrast to his previous testimony (R. 274), he stated that his past work involved disassembling, not rebuilding motors (R. 292-93).

The Vocational Examiner ("VE") assigned testified that Sutherland took a group I.Q. test in the second grade, which showed that he had an I.Q. of 93, with an age equivalent of seven

5

years, eight month. (R. 298.) The VE also testified that Sutherland had a history of absences from school: 33 days in 1965, and 30 days in 1966, and a history of low grades (Tr. 298). Sutherland stated that he was in regular classes while in school, made very low grades, possibly repeated the 5th grade, and did not learn to read or write well. (R. 228

Records from Dickenson County School show that in sixth grade (1971-72), he earned a C in reading, and B's in English and writing, and that in seventh grade (1972-73), he earned B's in reading, English, and writing. (R. 17, 156). This is corroborated by Sutherland's testimony that he got some B's and C's in school. (R. 280.) Furthermore, consistent with his grade school I.Q. score, Sutherland was scheduled to take a general mechanics course in the eighth grade. (R. 17, 155), and specifically testified that he was not in special education classes (R. 155).

The VE classified Sutherland's past relevant work as a tear down mechanic and as a transmission mechanic as heavy and unskilled, and his past relevant work as a dairy farm worker as medium and unskilled (R. 312-13.) Given Sutherland's vocational profile and the aforementioned limitations, the VE testified that the individual could perform the jobs of mechanical assembler and production inspector and that neither of these jobs required skills above the sixth grade level. (R. 314.)

The ALJ found Mr. Sutherland to have the following Residual Functional Capacity.

> [T]o perform sedentary work requiring lifting up to ten pounds occasionally and less than ten pounds frequently, standing and/or walking up to two hours in an eight hour workday, and sitting up to six hours a day, perform pushing and/or pulling including use of foot and/or hand controls, with no postural, manipulative, visual communicative limitations. (R. 18.)

The ALJ acknowledged medical expert Dr. Gary Bennett, and noted: "The medical expert also testified that he knows of no tests that could be performed that could help determine if the claimant suffered from lifelong learning problems, or that could evaluate his condition 40 years

ago or determine the reliability of the score, and that he is not sure about the validity of the scores." (R. 20.) The ALJ questioned the March 2006 IQ testing and noted that Dr. Bennett testified it was "nearly impossible to 'fake good' on an IQ test." (R. 20.) The ALJ concluded Sutherland only had a limitation on work as to limit work only to reading at the sixth grade level. (R. 21.)

The ALJ noted that that the Medical-Vocational Guidelines, 20 CFR 404, Subpart P, App. 1, contain a framework to determine whether a person is "disabled" or "not disabled". (R. 23.) The ALJ noted: "if claimant had the residual functional capacity to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational rule 201.18." (R. 23.)

### III. STANDARD OF REVIEW

Congress has limited judicial review of decisions by the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); see also Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§

404.1527-404.1545. The regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527 and 416.927. If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. Laws, 368 F.2d at 642.

**IV.     DISCUSSION**

Plaintiff contends that the ALJ did not have substantial evidentiary support for his findings of fact. (Pl. Br. 17). Specifically because the evidence establishes that Plaintiff suffers from a full scale IQ of 67, indicating mental retardation, and suffers from significant physical limitations. The Magistrate Judge recommends the Plaintiff's Motion for Summary Judgment be granted, denying the Commissioner's motion for summary judgment, reversing the Commissioner's final decision, entering a judgment for the Plaintiff, and recommitting the case to the Commissioner solely to calculate and pay proper benefits. The Commissioner objects to the Magistrate's recommendation, arguing the ALJ's decision is supported by substantial evidence based on the record and because the Magistrate Judge re-weighed the evidence in contravention of the Act and the law of this Circuit.

As the standard of review requires, I am precluded from judging the evidence in this case in the way a finder of fact would, and instead must review the record before me and determine whether substantial evidence supports the decision of the Commissioner. For the reasons given here, I find that the Commissioner had substantial evidence in the record for his conclusion that Plaintiff could perform other work in the national economy and that Plaintiff was not disabled under the Act. I conclude that there is sufficient information in the record from which the ALJ

8

could reasonably decide whether the plaintiff was disabled and thus, find no legal basis to remand this case to the Commissioner for further consideration.

### A. The Administrative Law Judge had substantial evidence to find Sutherland was not disabled.

There is substantial evidence in the record to support the ALJ's finding that Sutherland is not Mentally Retarded according to § 12.05C. 20 C.F.R. 404, Subpt. P, App. 1 § 12.05C[4]. The plaintiff bears the burden of proving that she is under a disability. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). According to 12.05C, Sutherland was required to prove that he met all criteria of the listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Meeting only some criteria for a listing "no matter how severely, does not qualify." Id.. The ALJ may obtain the evaluations of state agency physicians and psychologists who review the evidence of record, and these evaluations can constitute substantial evidence. Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986). This Circuit has also recognized that an ALJ may rely on the opinion of a reviewing physician. Id. at 346.

The record contains evidence which shows that in 1966, Sutherland was in second grade, and had an I.Q. score of 93, well within the normal range. Although Sutherland did not go very far in school, he was able to get B's and C's. Furthermore, Sutherland specifically testified that he was not in special education classes in school.

Sutherland contends that a 2006 psychological evaluation, which showed he had a Full Scale I.Q. of 67, is more reflective of his abilities and, along with his school and work history, this score should meet the criteria of 12.05C. However, the record contains ample evidence to support a conclusion that Sutherland is not mentally retarded. In describing his past relevant

---

[4] See Footnote 3, supra.

work as a mechanic, Sutherland testified, that he had to tear down motors and put them back together. (R. 267, 274, 292-93.) Dr. Bennett, a medical expert witness, testified that the 2006 I.Q. evaluation did not constitute evidence of a lifelong impairment or one that existed prior to age 22, as per the statute. (R. 20.) Further, Dr. Bennett testified that it was hard to get a higher I.Q. score on the group test, which Sutherland took in grade school, or fake a higher score. (R. 20.) Dr. Bennett also stated that Sutherland's academic deficiencies could be due to a number of things (other than mental retardation), such as a learning disability, a motivation problem, or the fact that other things were going on for Sutherland that were more pressing than school (R. 303-04).

The ALJ held that Sutherland failed to establish his condition existed before age 22, which is consistent with both the opinions of the state agency physicians (R. 16) who found that Sutherland did not meet Listing 12.05C (R. 59-60, 242, 250 (block 23), and with Dr. Bennett (R. 20, 306). The corroboration of evaluations from state agency physicians and psychologists, the opinion of the reviewing physician, and Sutherland's work and academic history provided the ALJ with substantial evidence to rule that Sutherland was not disabled according to Section 12.05C.

### B. The Magistrate Judge erroneously re-weighed the evidence.

The Magistrate Judge reviewed this case *de novo*, instead of applying the proper standard of review, and therefore, the ALJ's findings should be sustained. As stated previously, Congress limited the scope of this Court's review of the Commissioner's final decision to determining if it is supported by substantial evidence only. 42 U.S.C. §§ 405(g), 1383(c)(3). This Circuit has consistently held that it is the duty of the ALJ reviewing the case, and not the responsibility of

the courts, to make findings of fact and to resolve conflicts in the evidence. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) (providing that it is not the role of the court to try the case *de novo* when reviewing disability determinations). The ALJ's credibility determinations are entitled to great weight. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). In reviewing the record for substantial evidence, the court must not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). .

In this case, the Magistrate Judge disregarded the well-reasoned findings of the ALJ and re-weighed the medical evidence, contrary to the Act and the law of this Circuit. Because the ALJ properly evaluated the totality of the medical evidence under the listings criteria, his determination that Sutherland's impairment did not meet 12.05C's evidentiary threshold is supported by substantial evidence. Where, as here, substantial evidence supports the ALJ's findings, the court should affirm the decision. Accordingly, I find that substantial evidence supports the ALJ's holding in this case.

## V. CONCLUSION

For the reasons stated below, I will **REJECT** the Magistrate Judge's Report and Recommendation and **SUSTAIN** the Defendant's objections. I will **GRANT** the Defendant's Motion for Summary Judgment and this case shall be **DISMISSED** from the active docket of this Court.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 10th day of February, 2009.

                                                          s/Jackson L. Kiser
                                                          Senior United States District Judge